In the
United States Court of Appeals
For the Seventh Circuit

No. 98-3888

FREDERICK A. HURLEY
and CHRISTINE A. HURLEY,

Plaintiffs-Appellants,

v.

MOTOR COACH INDUSTRIES, INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 95-169-CJP--Clifford J. Proud, Magistrate Judge.

Argued September 16, 1999--Decided July 25, 2000

Before RIPPLE, MANION, and Diane P. Wood, Circuit
Judges.

Diane P. Wood, Circuit Judge.  While driving a
Greyhound bus from St. Louis to Columbus, Ohio on
February 25, 1993, Fred Hurley was involved in a
serious accident with a jack-knifed double
trailer. Hurley himself suffered severe lower
body injuries in the collision, which collapsed
the front wall of the bus. The bus that Hurley
was driving was equipped only with a standard two
point seat belt. It had neither an airbag nor any
structural enhancements that would provide
additional protection to the driver in the event
of a high speed crash like the one in which he
was involved. Hurley believes that these flaws
make the bus he was driving unreasonably
dangerous and, consequently, render the bus's
manufacturer, Motor Coach Industries, liable for
his injuries.

He and his wife (whose loss of consortium
claims are entirely dependent on his success in
this litigation) thus decided to sue Motor Coach,
as well as Consolidated Freightways (the
operators of the trailers that his bus hit), Road
Systems, Inc. (the makers of the trailers that
Hurley struck), and Pines Trailer Corporation
(another trailer manufacturer). Hurley began in
Illinois state court, but Consolidated
Freightways removed the action to the District

Court for the Southern District of Illinois on diversity grounds. After the removal, Hurley settled his claims against Consolidated Freightways and Road Systems and dismissed Pines under Fed. R. Civ. P. 41(a). Except as they relate to a jurisdictional problem that we address below, Hurley's claims against these parties are not at issue in this appeal. The parties agreed to submit their case to a magistrate judge, as 28 U.S.C. sec. 636(c) permits. Finding that Hurley's case was preempted by the federal crashworthiness standard, Magistrate Judge Proud dismissed the action; this appeal followed.

I

Before we discuss the merits of Hurley's appeal, we must address a potential jurisdictional problem. Hurley's original suit involved four defendants--Motor Coach, Consolidated Freightways, Road Systems, and Pines Trailer. For jurisdictional purposes, the Hurleys are citizens of Arkansas. Motor Coach is a Delaware corporation with its principal place of business in Arizona. Consolidated Freightways is also a Delaware corporation, but its principal place of business is Oregon. Road Systems is a California corporation and its principal place of business is there, too. Finally, Pines Trailer is an Illinois corporation with its principal place of business in Illinois. Complete diversity, which is required for jurisdiction under 28 U.S.C. sec. 1332, therefore exists between the Hurleys and all defendants. (Given the severity of Hurley's injuries, nobody is contesting the adequacy of the amount in controversy.)

Not every diversity case qualifies for removal, however. For cases that start out in state court, where it is the defendant who wants the federal forum, there is an additional hurdle to clear before successfully reaching federal court. Under 28 U.S.C. sec. 1441(b), a non-federal question case "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This rule, sometimes called the "forum defendant" rule, means that Pines's presence in the case, if proper, would normally keep the case in state court. We say "normally" because in the typical case, a plaintiff who is about to see her chosen court slip away will object to removal if there is an in-state defendant, and thereby secure a speedy return to state court.

That did not happen in this case. After the defendants filed their removal petition, Hurley did nothing. Since 28 U.S.C. sec. 1447(c) gives

plaintiffs only 30 days to object to removal, Motor Coach argues that Hurley has waived any objection to removal. Of course, waiver is possible only if the forum defendant rule is nonjurisdictional; true jurisdictional flaws are nonwaivable and can be raised at any time. See, e.g., Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) ("subject-matter delineations must be policed by the courts on their own initiative even at the highest level"). Section 1447(c) spells out this fundamental rule for removed cases, where it states specifically that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Justice Kennedy explained the bedrock importance of the rule requiring courts to notice jurisdictional defects at any time in United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72 (1988):

The distinction between subject-matter jurisdiction and waivable defenses is not a mere nicety of legal metaphysics. It rests instead on the central principle of a free society that courts have finite bounds of authority, some of constitutional origin, which exist to protect citizens from the very wrong asserted here, the excessive use of judicial power. The courts, no less than the political branches of the government, must respect the limits of their authority.

Id. at 77.

We must decide, therefore, whether the forum defendant rule is jurisdictional, in the sense we have been using the term, or if it is of a lesser status. That question has been bouncing around the federal courts of appeals for more than 75 years, yet oddly enough it remains unresolved in this circuit. LaMotte v. Roundy's, Inc., 27 F.3d 314, 316 n.3 (7th Cir. 1994). The overwhelming weight of authority, however, is on the "nonjurisdictional" side of the debate. Compare Korea Exch. Bank v. Trackwise Sales Corp., 66 F.3d 46, 50 (3d Cir. 1995) (nonjurisdictional); In re Shell Oil Co., 932 F.2d 1518, 1522 (5th Cir. 1992); Farm Constr. Serv. v. Fudge, 831 F.2d 18, 21-22 (1st Cir. 1987); 428 F.2d 880, 882 (2d Cir. 1970) (Friendly, J.) (nonjurisdictional); Bailey v. Texas Co., 47 F.2d 153, 155 (2d Cir. 1931) (L. Hand, J.) (nonjurisdictional); Hanley-Mack Co. v. Godchaux Sugar Co., 2 F.2d 435, 437 (6th Cir. 1924) (nonjurisdictional) with Hurt v. Dow Chemical Co., 963 F.2d 1142, 1145-46 (8th Cir. 1992) (jurisdictional). See also Snapper, Inc. v. Redan, 171 F.3d 1249, 1258 (11th Cir. 1999) (interpreting 1996 statutory changes as resolving the conflict and making the forum

defendant rule waivable).

   A number of reasons persuade us that the majority rule is the correct one. First, the theme of several recent Supreme Court decisions that have considered curable defects in diversity jurisdiction has been to find that as long as the court's jurisdiction is proper at the time of trial and judgment, the case need not be dismissed because of an earlier jurisdictional problem. This was the precise holding of Caterpillar, Inc. v. Lewis, 519 U.S. 61 (1996), where the question was whether a lack of complete diversity at the time of removal required dismissal, even though all claims concerning the nondiverse defendant were settled and that party was dismissed before the trial began. The Court held that the answer was no, explaining that "the jurisdictional defect was cured, i.e., complete diversity was established before the trial commenced. . . . But a statutory flaw-- Caterpillar's failure to meet the sec. 1441(a) requirement that the case be fit for federal adjudication at the time the removal petition is filed--remained in the unerasable history of the case." 519 U.S. at 73 (emphasis in original). Particularly in light of the strong interests in finality, efficiency, and economy that attach to a completed trial, the Court found that the plaintiff's opportunity to raise objections within the 30 days afforded by sec. 1447(c) was sufficient to protect his interests.

   Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826 (1989), took the same general approach to a different problem with diversity jurisdiction. In Newman-Green, indeed, the problem was more severe: the case had proceeded to judgment in the district court while an individual whose presence spoiled complete diversity remained a party. The defect in jurisdiction was noticed only at the court of appeals level. The Supreme Court held that Rule 21 of the Federal Rules of Civil Procedure allows the courts of appeals (in addition to the district courts) to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction. Once again, therefore, the note the Court struck is that the last chance for ensuring that jurisdiction is proper occurs as late as the final judgment in the case.

   The situation we face is different, and in many ways less troublesome, than the problem the Court encountered in Caterpillar and Newman-Green. If Hurley's case had been filed in the first instance in federal court, jurisdiction under sec. 1332 would have been clear. Or, if Hurley had originally filed a state court action against Motor Coach, Consolidated, and Road Systems, those defendants could have removed the case to

federal court since none was an in-state defendant. Once in federal court, Hurley could have filed an amended complaint adding Pines, if it turned out that Pines might have been responsible for his injuries. In short, the case as it arrived in federal court met every requirement for federal jurisdiction: it simply took the wrong path, in a sense, because there was an in-state defendant. This, we think, is more a matter of removal procedure, and hence waivable, than a matter of jurisdiction.

The policy behind the forum defendant rule also supports the nonjurisdictional characterization. The rule is designed to preserve the plaintiff's choice of a (state) forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice against an out-of-state party. After removal, if the plaintiff wants to remain in state court, she can file a timely motion for remand. Under the circumstances, it seems that the only purpose that would be served by declaring the forum defendant rule jurisdictional would be to preserve for plaintiffs rights that the plaintiffs themselves failed to assert. For these reasons, we join the longstanding line of authority that holds that the forum defendant rule is nonjurisdictional. Hurley thus had only 30 days to object to removal based on the presence of Pines in the case (which did not last long anyway, as it turned out that Pines had not built the trailers in question). Since there were no other potential flaws with the district court's diversity jurisdiction, we now turn to the merits of the appeal.

II

Hurley's claim against Motor Coach is an Illinois products liability action. In order to show that Motor Coach's product was unreasonably dangerous, he had to present an alternative design that is "economical, practical, and effective." Baltus v. Weaver Division of Kiddie & Co., Inc., 557 N.E.2d 580, 586 (Ill. App. Ct. 1990). Hurley's experts produced a design that had four basic components: a knee bolster, a three point seat belt, an airbag, and, most controversially, a steel cage (similar to a roll cage on a convertible) that would surround the driver's area. Additionally, the design called for the removal of the front row of passenger seats in order to create a crumple zone, presumably for the protection of the passengers on the bus.

Motor Coach argued to the court below that there are three reasons that Hurley's design is insufficient to get his claims to a jury. First,

it maintained that his design is not economical, practical, or effective because it will be too expensive and, in any event, the steel cage will subject the driver to crushing deceleration in a front-end collision. Next, it contested the qualifications of Hurley's experts under the standard articulated in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), and Kumho Tire, Ltd. v. Carmichael, 526 U.S. 137 (1999). Finally, it argued that because Hurley's design forecloses a manufacturer's choice between seat belts and airbags, it is preempted by the National Highway Transportation and Safety Board's (NHTSA) Federal Motor Vehicle Safety Standard 208 (FMVSS 208), 49 C.F.R. sec. 571.208. The district court's summary judgment in favor of Motor Coach was based solely on the preemption theory.

Specifically, the district court found that Hurley's claim is preempted by FMVSS 208, which is the federal crashworthiness standard. The Illinois products liability cases dealing with alternative designs suggest that there is more than one way of showing that a product as designed by the defendant was unreasonably dangerous, although one possibility is to prove that an "economical, practical, and effective" alternative design would be safer. Baltus, 557 N.E.2d at 585. Hurley, however, has put all of his eggs in the "alternative design" basket. As a practical matter, his theory would require manufacturers selling buses in Illinois to incorporate his proposed steel cage, crumple zone, airbag, and three point seat belt, lest they face liability for selling an uncrashworthy vehicle.

Hurley's theory is remarkably close to the one the Supreme Court rejected in Geier v. American Honda Motor Co., 120 S. Ct. 1913, 1922 (2000). In Geier, the Court had to decide whether FMVSS 208 and the National Traffic and Motor Vehicle Safety Act of 1966 (NTMVS), 15 U.S.C. sec. 1381 et seq., preempted a state common-law tort action in which the plaintiff claimed that an auto manufacturer who was in compliance with the federal standard could nonetheless be held liable for failing to equip its cars with airbags. The Court held that the Act's express preemption provision did not preempt the suit, but that ordinary preemption principles continue to apply to this area. Under those principles, it found that the lawsuit actually conflicted with FMVSS 208 and hence the statute, and it could not go forward.

Aside from the fact that Hurley's claim concerns buses and Geier's claim concerned cars, it is hard to see any significant difference between the two situations. The applicable

standard for buses like the one that Hurley was driving is found at 49 C.F.R. sec. 571.208 S4.4.3.1; see also National Transportation Safety Board Factual Report of Highway Accident Investigation, CRH-93-F-H018 at 4 (Hurley's bus was manufactured in 1992; its gross vehicle weight was approximately 28,200 pounds.). The regulatory section provides that "[e]ach bus with a gross vehicle weight rating of more than 10,000 pounds shall comply with the requirements of S4.4.2.1 or S4.4.2.2." That "or" is critical, since S4.4.2.1 calls for a "complete passenger protection system" for the driver; it must comply with crash protection requirements found in S5 of FMVSS 208. On the other hand, S4.4.2.2 requires only a seat belt assembly; it, too, is subject to guidelines, but what is important for our case is that it does not require an airbag or a three point seat belt, as Hurley's design does. Nobody doubts, and indeed Hurley argued in his brief, that under his theory the manufacturer loses the choice between two point seat belts and the comprehensive system that his engineers have designed. Motor Coach's argument is thus a fairly straightforward one--because federal law gives bus manufacturers a choice as to the driver protection systems installed in a particular bus, an Illinois tort suit that rests on a theory that forecloses that choice is preempted.

Geier confirms Motor Coach's theory that a state lawsuit that forecloses an option left open by FMVSS 208 is in fact preempted. In Geier, the Court traced the history of FMVSS 208 and concluded that Congress and the Department of Transportation expressed a preference for leaving to manufacturers the choice between airbags and other types of safety devices (at least for the period in time during which the plaintiff's car was manufactured). Geier noted the controversy over the efficacy and utilization of airbags and seatbelts and concluded that FMVSS 208 "deliberately sought variety" by leaving the choice of passenger protection system up to manufacturers. Geier, 120 S. Ct. at 1924.

One particular aspect of Geier's discussion of FMVSS 208 is especially relevant here. One of the major problems with which the Department of Transportation needed to deal when formulating standards for passenger cars is a strong aversion among the driving public to seatbelts. Id. at 1923-24 (recalling the "fiasco" that resulted when automakers installed systems that prevented drivers from starting their cars unless seatbelts were buckled). NHTSA found that this problem was even more acute among heavy vehicle operators. See 53 Fed. Reg. 25336, 25338 (July 6, 1988) (noting that seat belt use among heavy truck drivers is far below the national average for all

vehicles). The commentary accompanying the final rules indicates that even the details of seat belt design--such as the retractor mechanism, mounting position, and buckle releases--were hotly debated during the rulemaking process. See id. at 25339-41. Consequently, NHTSA's decision to leave the manufacturers of heavy buses with the option of using a two point seat belt that met regulatory standards is quite understandable as a way of promoting safety by encouraging drivers to use the safety equipment that manufacturers install. But Hurley's proposal unequivocally requires a three point seat belt, a requirement that could reduce utilization and thereby undermine FMVSS 208's safety objectives. Perhaps the design would not in fact reduce seatbelt utilization, but that is not the point. The point is that, as in Geier, the decision to leave options open to bus manufacturers was made with specific policy objectives in mind. Hurley's suit, if successful, would undermine that policy objective and is therefore preempted.

Even before Geier, our own case law would have led us to the same result. See Gracia v. Volvo Europa Truck, N.V., 112 F.3d 291 (7th Cir. 1997). The arguments Hurley offered to distinguish Gracia are the same as those he would raise to avoid Geier, and so we address them briefly. In his view, FMVSS 208 does not speak to his particular problem. He maintains that his theory of uncrashworthiness is limited to the ability of the bus to protect the driver in high profile impacts (i.e. impacts with trucks or other large vehicles where the point of collision is above the bumper). We are unpersuaded by this distinction. The ability to withstand high profile impacts is one aspect of the general topic of crashworthiness that FMVSS 208 addresses. Otherwise, the option that both Geier and Gracia preserve for manufacturers would be eviscerated by the particulars of the crash in question. If a vehicle meets the basic crashworthiness standards of FMVSS 208, the after-the-fact details of the plaintiff's particular injuries do not, and cannot, matter. As Geier (and Gracia) held, a state-law tort action that forecloses an option left open to the manufacturer is preempted under FMVSS 208. The only qualification is the one recognized in Geier--if there are "special design related circumstance[s] concerning a particular type of [vehicle]," then a manufacturer's own design decisions may foreclose one or more of the choices left open by the federal standards. Geier, 120 S. Ct. at 1927-28. So, for example, if a plaintiff showed that the design particulars of her car made airbags the only viable option, then FMVSS 208 would not foreclose the case. This loophole is of no use to Hurley, however; he has

pointed to nothing about the design of this particular bus that makes it different from the average "bus with a gross vehicle weight rating of more than 10,000 pounds." 49 C.F.R. sec. 571.208 S4.4.3.1.

III

We conclude that the Supreme Court's opinion in Geier governs Hurley's case and compels the conclusion that when a Federal Motor Vehicle Safety Standard leaves a manufacturer with a choice of safety device options, a state suit that depends on foreclosing one or more of those options is preempted. Hurley's proposed design, with three point seat belts and airbags, would preclude a bus manufacturer from exercising the "[s]econd option" contained in S4.4.2.2. The history of the safety requirements for large buses like the one Hurley was driving indicates that these options were important in the overall safety regime created by FMVSS 208. His suit interferes with these federal policy choices. Under Geier, it is preempted, and we thus Affirm the judgment of the district court.