## FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**MELINDA R. SHAPIRO**
**LIBBY Y. GOODKNIGHT**
**CATHERINE E. SABATINE**
Krieg DeVault LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW DALEY**
Daley Law Firm, L.L.C.
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KINDRED NURSING CENTERS, d/b/a | ) | |
| ROYAL OAKS HEALTH CARE | ) | |
| AND REHABILITATION CENTER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 84A04-1402-MI-56 |
| | ) | |
| THE ESTATE OF CARRIE ETTA McGOFFNEY, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

INTERLOCUTORY APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Charles D. Bridges, Special Judge
Cause No. 84D02-1205-MI-3481

**August 20, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Carrie Etta McGoffney was a resident of the Royal Oaks Health Care and Rehabilitation Center, a facility operated by Appellant-Petitioner Kindred Nursing Centers ("Royal Oaks"), from September 30, 2008, until June 30, 2009. Carrie, who is now deceased, had two daughters, Ivy and Kelly McGoffney, and a granddaughter, Kelly's daughter Keeli Mayes. In December of 2010, at a time when Ivy was Carrie's sole guardian and attorney-in-fact, Kelly filed a proposed complaint in superior court alleging medical malpractice against Royal Oaks on behalf of Carrie. Around that time, the Vigo Probate Court, which had established Ivy's guardianship, issued an order providing Kelly with the authority to pursue a medical malpractice action on Carrie's behalf. Royal Oaks challenged the Probate Court's order and also filed a motion to dismiss the proposed complaint in superior court on the basis that Kelly did not have standing. The Probate Court declined to rescind its order, but the superior court dismissed the complaint filed by Kelly in late December of 2011.

In early January of 2012, the Probate Court removed Ivy as Carrie's guardian and appointed Keeli in her place. The next month, Keeli filed what she styled an amended proposed medical malpractice complaint against Royal Oaks. In May of 2012, Royal Oaks filed for summary judgment on the basis that the filing by Keeli was untimely. In November of 2012, Carrie died. Kelly was appointed personal representative of Appellee-Respondent Carrie's estate ("the Estate"), and the Estate was substituted as plaintiff in the proposed complaint against Royal Oaks. The trial court eventually denied Royal Oaks' summary

2

judgment motion, and we accepted jurisdiction over Royal Oaks' interlocutory appeal. Royal Oaks argues that because neither Indiana Trial Rule 15(C), the tolling the provisions of the Medical Malpractice Act, nor the Journey's Account Statute ("the JAS") apply, the trial court erred in allowing the Estate's proposed complaint to proceed. Concluding that the JAS applies to revive Keeli's complaint, we affirm.

## FACTS AND PROCEDURAL HISTORY

Carrie, who is now deceased, had two daughters, Ivy and Kelly. In February of 2004, Carrie signed a durable power of attorney appointing Kelly as her attorney-in-fact. Carrie resided at Royal Oaks from September 30, 2008, until June 30, 2009. On November 18, 2008, Carrie revoked her appointment of Kelly as her attorney-in-fact and signed a new durable power of attorney naming Ivy in her place. On January 23, 2009, Kelly petitioned the Probate Court in Vigo County to appoint her Carrie's guardian ("the Guardian"), which petition Ivy opposed. On April 1, 2009, the Probate Court appointed Ivy as the Guardian, an appointment this court affirmed on appeal.

On December 22, 2010, while Ivy was still the Guardian, Kelly filed a proposed medical malpractice complaint in Vigo Superior Court against Royal Oaks on Carrie's behalf. (Appellant's App. 49). Meanwhile, on February 4, 2011, the Probate Court issued a *nunc pro tunc* order amending an order it issued on December 17, 2010, as follows: "*IT IS FURTHER ADJUDGED AND DECREED by the Court that Ivy McGoffney waives the right to file a mal-practice lawsuit against Royal Oaks Healthcare therefore entitling Kelly McGoffney to file said mal-practice lawsuit if she so desires." Appellee's App. p. 6. On

3

April 1, 2011, Royal Oaks, even though a non-party to the guardianship case, filed a motion to withdraw the Probate Court's *nunc pro tunc* order. On April 13, 2011, the Probate court denied Royal Oaks' motion to withdraw the *nunc pro tunc* order. On May 23, 2011, Royal Oaks filed a motion to dismiss Kelly's proposed medical malpractice complaint on the ground that Kelly was not a member of the class authorized to bring a medical malpractice suit on Carrie's behalf. On December 30, 2011, the Vigo Superior Court dismissed Kelly's proposed complaint. This dismissal was not appealed.

On January 4, 2012, Kelly's daughter Keeli was appointed the Guardian. On February 16, 2012, Keeli filed what was styled an amended proposed medical malpractice complaint against Royal Oaks on Carrie's behalf. On May 1, 2012, Royal Oaks moved for summary judgment on the basis that the two-year statute of limitations for medical malpractice actions had run. The trial court set a deadline of August 1, 2012, for Keeli to respond to Royal Oaks' summary judgment motion, which deadline Keeli missed by filing a motion for enlargement of time within which to file her response on August 10 and filing her response on August 13. On August 20, 2012, Royal Oaks moved to strike Keeli's summary judgment response on the ground that it was untimely.

On November 20, 2012, Carrie died. Kelly was appointed the personal representative of the Estate. On February 27, 2013, the Estate moved to substitute itself for the Guardian in the proposed complaint against Royal Oaks, which motion the trial court granted on March 11, 2013. On March 27, 2013, the Estate filed a motion to supplement Keeli's summary judgment response and designation of evidence, a motion to which Royal Oaks objected. On

4

November 15, 2013, the trial court held a hearing on pending matters. On December 10, 2013, the trial court entered an order striking Keeli's summary judgment response and the Estate's supplemental response and designation of evidence as untimely. The trial court, however, denied Royal Oaks' summary judgment motion, and this court accepted jurisdiction over Royal Oaks' interlocutory appeal.

## DISCUSSION AND DECISION

Royal Oaks contends that the trial court erred in denying its summary judgment motion. When reviewing the grant or denial of a summary judgment motion, we apply the same standard as the trial court. *Merchs. Nat'l Bank v. Simrell's Sports Bar & Grill, Inc.*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Id.*; Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Merchs. Nat'l Bank*, 741 N.E.2d at 386. To prevail on a motion for summary judgment, a party must demonstrate that the undisputed material facts negate at least one element of the other party's claim. *Id.* Once the moving party has met this burden with a prima facie showing, the burden shifts to the nonmoving party to establish that a genuine issue does in fact exist. *Id.* The party appealing the summary judgment bears the burden of persuading us that the trial court erred. *Id.*

**The JAS**

The Estate contends that Indiana Code section 34-11-8-1, also known as the JAS,

applies to allow its proposed medical malpractice complaint to survive summary judgment.

The JAS provides as follows:

> (a) This section applies if a plaintiff commences an action and:
>     (1) the plaintiff fails in the action from any cause except negligence in the
>     prosecution of the action;
>     (2) the action abates or is defeated by the death of a party; or
>     (3) a judgment is arrested or reversed on appeal.
> (b) If subsection (a) applies, a new action may be brought not later than the
> later of:
>     (1) three (3) years after the date of the determination under subsection (a);
>     or
>     (2) the last date an action could have been commenced under the statute of
>     limitations governing the original action;
> and be considered a continuation of the original action commenced by the
> plaintiff.

Ind. Code § 34-11-8-1.

As this court explained in *Dempsey v. Belanger*, 959 N.E.2d 861 (Ind. Ct. App. 2011),

*trans. denied*,

> The JAS generally permits a party to refile an action that has been
> dismissed on technical grounds. *Irwin Mortg. Corp. v. Marion Cnty.
> Treasurer*, 816 N.E.2d 439, 443 (Ind. Ct. App. 2004). The JAS's purpose is to
> ensure that a diligent suitor retains the right to a hearing in court until
> receiving a judgment on the merits. *Id*. at 444. "The prerequisites under th[is]
> statute … are strict." 22A Stephen E. Arthur, *Indiana Practice: Civil Trial
> Practice* § 39.12 (2nd ed. 2007).

> A plaintiff cannot be said to "fail" within the meaning of this
> statute unless he makes an unavailing effort to succeed. If he makes
> such an effort in good faith, *and fails upon some question which does
> not involve the merits of his case*, and if such failure is not due to
> negligence in its prosecution, the statute may be held to apply.

6

*Al-Challah v. Barger Packaging*, 820 N.E.2d 670, 674-75 (Ind. Ct. App. 2005) (emphasis added) (quotation omitted). That is, the JAS provides for continuation when a plaintiff fails to obtain a decision on the merits for some reason other than his own neglect and the statute of limitations expires while his suit is pending. *Id*. at 674; *see also Cox v. Am. Aggregates Corp*., 684 N.E.2d 193, 195 (Ind. 1997) (enabling an action dismissed for lack of personal jurisdiction in one state to be refiled in another state despite the intervening running of the statute of limitations). To invoke the benefits of the JAS, the claimant must have commenced a timely action that failed for reasons other than "negligence in the prosecution." *Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1243 (Ind. 2010). Examples of conduct which would likely be deemed negligence in prosecuting a case presumably include dismissal for failure to prosecute, dismissal for failure to comply with the discovery rules, failure to pay filing fees, and naming the wrong party. *Id*. at 1244; 22A Arthur, § 39.12.

*Dempsey*, 959 N.E.2d at 865-66 (emphasis in *Al-Challah* quotation in *Dempsey*). "[The JAS's] broad and liberal purpose is not to be frittered away by narrow construction." *Vesolowski v. Repay*, 520 N.E.2d 433, 434 (Ind. 1988).

We conclude that the circumstances of this case warrant application of the JAS and support the trial court's judgment. We see no indication in the record that Kelly was anything but diligent in her prosecution of the proposed complaint or acted in bad faith. After timely filing the first proposed medical malpractice complaint on Carrie's behalf, Kelly secured a *nunc pro tunc* order from the Probate Court providing that she had the legal authority to do just that. In essence, the Probate Court created a limited guardianship in Kelly for the purpose of pursuing a medical malpractice complaint, one that was in effect until the appointment of Keeli. Additionally, the complaint filed by Kelly was dismissed because the superior court concluded that she did not have standing to file suit on behalf of Carrie, which, even if the correct decision, had nothing to do with the merits of the complaint. In summary, the suit was timely filed, diligently prosecuted in good faith, and it

7

failed for a reason other than Kelly's negligence. *See* Indiana Code section 34-11-8-1(a)(1). The complaint filed by Keeli, essentially identical to the one previously filed by Kelly, therefore survives pursuant to the JAS.[1] *See, e.g.*, *Vesolowski*, 520 N.E.2d at 435 (concluding, in medical malpractice case, that JAS applied to revive original complaint dismissed for lack of personal jurisdiction where original action was timely, the trial court dismissed it without reaching the merits, and it was "abated," satisfying one of the JAS's conditions).

Royal Oaks' argument is essentially that the JAS does not apply because the Probate Court's order giving Kelly the right to pursue a medical malpractice claim on Carrie's behalf was invalid. Even if Royal Oaks' premise is valid, this argument is unavailing, as the question is not whether Kelly's original complaint had legal merit, but whether it was pursued timely, diligently prosecuted in good faith, and failed for a reason other than Kelly's negligence. Even if the Probate Court's purported creation of a limited guardianship *was* somehow invalid in the abstract, the order creating it was never rescinded or overturned, and it therefore remained in effect at all relevant times. Kelly had in hand a valid court order specifically providing that she could pursue the complaint on Carrie's behalf, and we conclude that this is sufficient to establish her good faith. To rule otherwise would be to embrace the notion that Kelly should not have been able to rely on the Probate Court's order, which, in a word, would be something of a "gotcha."

---

[1] Royal Oaks does not contend, nor the does the record suggest, that any unfair prejudice would result in allowing the proposed complaint to proceed. In addition to Keeli's complaint adding no new allegations or parties, it was filed within two months of the dismissal of Kelly's.

We affirm the judgment of the trial court.[2]

BARNES, J., and BROWN, J., concur.

---

[2] Because we conclude that the JAS applies, we need not address Royal Oaks' remaining arguments.