**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 13, 2012
Decided June 21, 2012

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-3450

| | |
|---|---|
| SHARON LAND, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | |
| | No. 2:11-cv-132-WTL-DKL |
| INTERNATIONAL BUSINESS MACHINES, INC., *et al.*, | William T. Lawrence, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Sharon Land lived through a horror when her mentally ill son gouged out one of her eyes during a schizophrenic episode in her Indiana home. Believing that the attack would never have happened if she could have afforded her son's anti-psychotic medication, Land brought this suit under 42 U.S.C. § 1983 and state law against IBM and several state employees, contending that their bungling of his Medicaid application effectively blocked his access to the medication and thus exposed her to an increased risk of violence. The district court dismissed Land's federal claims and relinquished jurisdiction over her state

claims, see 28 U.S.C. § 1367(c), and Land appeals. Although there is no denying that Land suffered a wrong, it is not one for which federal law provides a remedy. We therefore affirm the district court's decision.

## I

We accept for present purposes the facts as stated in Land's complaint, with all reasonable inferences drawn in her favor. See *Geinosky v. City of Chicago*, 675 F.3d 743, 746 (7th Cir. 2012). Land's son Seth was diagnosed with schizophrenia in 2007 after he stripped naked and burned his clothes in a public area of the college he attended. He was committed to a psychiatric facility, and his mother was appointed his guardian. He spent much of the next two years either committed in similar facilities or incarcerated. (Land's complaint does not mention why Seth was in jail, other than to note that he has been "self-destructive and violent to others when off psychiatric medication.")

Around the time of his diagnosis, Seth had been placed on Medicaid, which helped his mother afford his anti-psychotic medications. But in 2009, during a period when he was living with Land, Seth lost his Medicaid coverage because an unnamed employee of Indiana's social-services agency refused to process his application for renewal for reasons that are unclear. Land alleges only that "due to his incarceration" Seth missed an appointment to address his Medicaid eligibility. The complaint does not explain why this is significant, but that omission plays no part in our decision, and so we do not explore it further. Despite Land's efforts, the unnamed employee and one of his colleagues continued to refuse to process Seth's application for nearly four months. Without the assistance of Medicaid, Land could not afford Seth's medication or his placement in a facility that could address his medical needs. He was thus living at home, unmedicated, when the critical events occurred.

One night while he was off his medication, Seth violently attacked his mother, gouging out one eye, damaging the other, and causing other injuries. Land sued the two unnamed state-agency employees who had rejected her son's application, as well as the agency's director in both her official and individual capacities, and IBM, which had contracted with the state to help process Medicaid applications. She alleged that the defendants' failure to process her son's Medicaid application ultimately led to his violent outburst. She raised substantive-due-process and equal-protection claims, as well as state-law claims of negligence and aiding and abetting an assault and battery.

The defendants filed motions to dismiss on July 5, 2011; Land's response was due 17 days later, on July 22, see S.D. IND. L.R. 7.1(b); FED. R. CIV. P. 6(d). But that deadline passed

without her filing a brief. On July 26, her attorney, Brian Welke, moved for a 30-day extension, telling the magistrate judge (to whom the case had been referred for pretrial proceedings) that he had been "unable to research, prepare, and file Land's responsive pleading in the prescribed time, due to counsel's paralegal staff falling ill with an illness that could require surgery." The magistrate judge denied the motion because Welke had failed to show "excusable neglect" in missing the original deadline; the judge nonetheless agreed to extend the deadline by two weeks, until August 5. Land failed to meet this deadline as well. She waited another two weeks, until August 19, before even seeking another extension until August 22. On August 24, Welke finally filed Land's response. The same day, the magistrate judge summarily denied Welke's motion for an extension of time. IBM moved to strike the response, and the district judge granted the motion.

Two weeks later, the district court granted the defendants' motions to dismiss, concluding that Land had failed to state a claim for either a substantive-due-process or equal-protection violation. Relying on *Martinez v. California*, 444 U.S. 277, 284–85 (1980), the court reasoned that the connection between Seth's attack and the defendants' inaction was too remote to state a substantive-due-process claim. As for equal protection, the court emphasized that Land had failed to plead facts giving rise to a plausible inference that she belonged to a protected class or was treated differently from others who were similarly situated. With no federal claims remaining, the court relinquished jurisdiction over the state claims and dismissed them without prejudice.

## II

On appeal Land first asserts that the district court erred by striking her untimely response brief. Her attorney reiterates that his paralegal's illness made complying with the court's deadlines impossible and contends that his tardiness was merely a case of "excusable neglect." But this is hardly an unusual occurrence, even for a solo practitioner, and we review the court's decision only for abuse of discretion in any event. See *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). District courts are entitled to enforce deadlines so as to manage their calendars, see *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 538 (7th Cir. 2011); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606–07 (7th Cir. 2006), and here the district and magistrate judges acted well within the bounds of reason. Welke missed the initial filing deadline. After the magistrate judge accommodated his situation with an extension, Welke missed the second deadline. Finally, his brief came in two days later than the third proposed deadline. This pattern of delays was more than sufficient for the magistrate judge to decline to extend the deadline yet again and for the district court to conclude that it was proper to strike the brief. See *Yancick*, 653 F.3d at 535–36, 539 (no abuse of discretion for court to ignore exhibits filed two weeks

after extended deadline); *Spears v. City of Indianapolis*, 74 F.3d 153, 156–58 (7th Cir. 1996) (no abuse of discretion in striking materials filed a day late because of computer failure). And as for Welke's contention that his paralegal's illness made his workload unbearable and thus should have excused his inability to comply with court deadlines, we have rejected similar claims from overworked attorneys struggling to manage their caseloads. See *Sherman v. Quinn*, 668 F.3d 421, 426 (7th Cir. 2012) (no excusable neglect in failure to meet deadline because of lack of legal assistant); *Harrington v. City of Chicago*, 433 F.3d 542, 548 (7th Cir. 2006) (no excusable neglect where attorney missed status conference because of commitments to other cases).

Our review of the court's decision dismissing a case under Federal Rule of Civil Procedure 12(b)(6) is, however, *de novo,* and so we will overlook Land's failure properly to raise before the district court any arguments opposing the motion to dismiss. Unfortunately, it is difficult to discern exactly what Land is arguing at this point. But as far as we can tell, she begins by asserting that certain sections of the Medicaid statute create rights actionable under § 1983, see *Doe v. Kidd*, 501 F.3d 348, 356 (4th Cir. 2007); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 183 (3d Cir. 2004). This is an accurate statement of the law, but it cannot help her. She appears to be asserting that the defendants violated *Seth*'s rights by failing to process his application in a timely manner. The problem is that Land is not bringing this case as Seth's representative; she has made it perfectly clear that she is suing for her own injuries, inflicted by Seth because of the defendants' failure to perform their respective jobs. No court to our knowledge has recognized a private right of action under the Medicaid statute for this kind of indirect effect, and in light of the Supreme Court's caution in inferring new such rights from Spending Clause statutes, we do not feel free to take this step. See, *e.g., Alexander v. Sandoval,* 532 U.S. 275 (2001).

In addition, Land has advanced no reason why this court should disturb the district court's conclusions regarding her substantive-due-process and equal-protection claims. Failure to prevent violence by a third party who is not a state actor does not, with exceptions not relevant here, constitute a due-process violation. See *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195–97 (1989); *Richman v. Sheahan*, 512 F.3d 876, 885 (7th Cir. 2008). Her equal-protection claim was also correctly dismissed because she failed to plead either that she is a member of a protected class or that she was treated differently from someone who was similarly situated. See *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 601 n.1 (7th Cir. 2009); *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005).

For these reasons, we AFFIRM the judgment of the district court.