**Sharon LAND, Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, State of Indiana, Indiana Family and Social Services Administration, Defendants.**

**No. 1:14–cv–01733–RLY–MJD.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Signed May 26, 2015.

Jerry Avan Garau, Garau Germano, PC, Indianapolis, IN, for Plaintiff.

Anne M. Sidrys, Zachary D. Holmstead, Kirkland & Ellis LLP, Chicago, IL, Andrew W. Hull, Hoover Hull Turner LLP, Indianapolis, IN, for Defendant, International Business Machines Corporation.

Kelly J. Pautler, Indiana Attorney General, Patricia H. Strachan, Office of the Attorney General, Indianapolis, IN, for Defendants, State of Indiana, and Indiana Family and Social Services Administration.

## ENTRY ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RICHARD L. YOUNG, Chief Judge.

The Magistrate Judge recommended that the court grant the Plaintiff's Motion to Remand. For the reasons set forth below, the court **ADOPTS** the Report and Recommendation and **REMANDS** this action to the Marion Superior Court.

### I. Factual Background

In 2006, the Indiana Family and Social Services Administration ("FSSA") and International Business Machines Corporation ("IBM") entered into a Master Services Agreement, whereby IBM agreed to carry out many of the administrative responsibilities formerly carried out by FSSA and the State of Indiana. The following year, Plaintiff's adult son, Seth Land, was diagnosed with schizophrenia at the age of 20. Land applied for and received Medicaid coverage to help pay for his medications.

In 2009, Land's Medicaid coverage was terminated. Acting as Land's legal guardian, Plaintiff attempted to reinstate Plaintiff's Medicaid coverage, but was unsuccessful. Without his Medicaid coverage, Plaintiff had no means to obtain the medications necessary to treat his illness. On May 15, 2009, Land attacked and seriously injured Plaintiff.

On May 13, 2011, Plaintiff filed a lawsuit under 42 U.S.C. § 1983 against Anne Murphy, individually and in her capacity as Secretary of the FSSA, IBM, and John and Jane Doe, arising out of the personal injuries she sustained from her son. On September 29, 2011, the court dismissed Plaintiff's § 1983 claims, declined to exercise supplemental jurisdiction over Plain-

tiff's state law claims for, *inter alia*, negligence, and dismissed the state law claims without prejudice. (Filing No. 21–3 at 7). Plaintiff appealed the court's decision, but the Seventh Circuit affirmed. *Land v. Int'l Bus. Machines, Inc.*, 485 Fed.Appx. 830, 831 (7th Cir.2012).

On September 19, 2014, Plaintiff filed a Complaint in the Marion Superior Court against IBM, the FSSA, and the State of Indiana. Plaintiff explained that in refiling her claims, she "named the state entities responsible for the conduct alleged rather than the individuals who were named in the original federal court complaint, as required by Ind.Code § 34–13–3–5." The substance of Plaintiff's allegations remained the same, in that Plaintiff asserted that Defendants' negligence in administering Indiana's Medicaid program resulted in the attack that caused her injuries.

On October 22, 2014, IBM removed the action to this court. In its Notice of Removal, IBM asserted that the case was properly removable because Plaintiff's claims raise a substantial federal question and because complete diversity exists among all parties who were properly joined. Although neither the FSSA nor the State joined the Notice of Removal, IBM asserted that their joinder in the action was fraudulent, such that their joinder in the Notice was not required.

On November 21, 2014, Plaintiff moved to remand this case to state court. The court referred the motion to the Magistrate Judge on February 2, 2015. Soon thereafter, the Magistrate Judge issued his Report and Recommendation finding that FSSA's joinder was proper, thus destroying diversity jurisdiction. The Magistrate Judge therefore recommended that the court grant Plaintiff's Motion to Remand. IBM timely objected.

## II. Standard of Review

█ Under the doctrine of fraudulent joinder, "an out-of-state defendant's right of removal premised on diversity jurisdiction cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has 'no chance of success.'" *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir.2013) (quoting *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992)). The doctrine is designed to "protect the defendant's statutory right to remove," and therefore does not allow a plaintiff to "join a nondiverse defendant simply to destroy diversity jurisdiction." *Id.*

█ The defendant asserting fraudulent joinder bears "a heavy burden." *Poulos,* 959 F.2d at 73. "The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.* (emphasis in original). If the removing defendant can meet its burden, the court may "'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Morris,* 718 F.3d at 666 (quoting *Schur v. L.A. Weight Loss Centers, Inc.,* 577 F.3d 752, 763 (7th Cir. 2009)). Fraudulent joinder is therefore "an 'exception' to the requirement of complete diversity." *Id.* (quoting *Walton v. Bayer Corp.,* 643 F.3d 994, 999 (7th Cir. 2011)).

## III. Discussion

█ The Magistrate Judge concluded that the Journey's Account Statute operated to extend the statute of limitations and preserve Plaintiff's claims against the FSSA, meaning the FSSA was properly joined. Because Plaintiff and the FSSA are citizens of Indiana, the Magistrate Judge concluded that the FSSA's pres-

ence[1] in the action destroyed diversity jurisdiction. The court reviews the Magistrate Judge's ruling *de novo*. *Johnson v. Globus Med., Inc.*, 1:14–cv–00730–SEB–MJD, 2015 WL 71035, at *2 (S.D.Ind. Jan. 5, 2015).

The JAS provides:

Sec. 1.(a) This section applies if a plaintiff commences an action and:

(1) the plaintiff fails in the action from any cause except negligence in the prosecution of the action;

(2) the action abates or is defeated by the death of a party; or

(3) a judgment is arrested or reversed on appeal.

(b) If subsection (a) applies, a new action may be brought not later than the later of:

(1) three (3) years after the date of the determination under subsection (a); or

(2) the last date an action could have been commenced under the statute of limitations governing the original action;

and be considered a continuation of the original action commenced by the plaintiff.

Ind.Code § 34–11–8–1. The timeliness of Plaintiff's federal 2011 Complaint and its failure (i.e., dismissal without prejudice) are not in dispute. The resolution of the parties' dispute turns on whether the present action is a continuation of the 2011 federal action.

█ Generally, for an action to be considered a continuation of the former, the parties, the facts, and the causes of action must be the same. *Eves v. Ford Motor Co.*, 152 Ind.App. 34, 281 N.E.2d 826, 831 (1972) (finding plaintiff's cause of action a continuation of the first because it was against the same defendants for the same

claim); *see also Kindred Nursing Ctrs. v. Estate of McGoffney*, 15 N.E.3d 641, 646 n. 1 (Ind.Ct.App.2014) (applying statute to "complaint adding no new allegations or parties"). Citing *Crawford v. City of Muncie*, 655 N.E.2d 614 (Ind.Ct.App.1995), the Magistrate Judge found the present action to be a continuation of the first notwithstanding the fact that Plaintiff changed the name of the party defendant in this case from Anne Murphy, individually and in her official capacity as Secretary of the FSSA, to (simply) the FSSA.

In *Crawford,* the Indiana Court of Appeals observed that "[o]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." 655 N.E.2d at 618. The Court found that, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* In finding the Journey's Account Statute to apply, the Magistrate Judge concluded that the FSSA had notice of the 2011 federal action and an opportunity to respond.

The record reflects that the Indiana Attorney General's office represented Murphy in her individual and official capacity in the 2011 federal action. In accordance with Indiana Code § 34–13–3–5(e), the FSSA had an obligation to provide counsel for Murphy, and it did. Indeed, in the 2011 federal action, the Secretary of the FSSA joined IBM in moving to dismiss Land's claims. The court therefore agrees with the Magistrate Judge's conclusion that the FSSA had notice and an opportunity to respond to the 2011 federal action, and the Journey's Account Statute likely applies to save her otherwise time-barred claims.

1. Having found the FSSA's presence destroyed the court's diversity jurisdiction, the Magistrate Judge did not analyze whether the State was fraudulently joined.

## IV. Conclusion

The court finds the FSSA failed to meet its burden of establishing that Plaintiff has no chance of success in the present action due to the statute of limitations. Accordingly, the court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation (Filing No. 54) and **REMANDS** this action to the Marion Superior Court.

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO REMAND

MARK J. DINSMORE, United States Magistrate Judge.

This matter comes before the Court on Plaintiff's Motion to Remand. [Dkt. 20.] For the reasons set forth below, the Magistrate Judge recommends [1] that the Court GRANT the motion.

### I. Background

Sharon Land ("Plaintiff" or "Land") is an Indiana resident and the mother of Seth Land ("Seth"). [Dkt. 1–1 ¶¶ 1, 5 (Pl.'s Compl.).] In 2007, Seth was diagnosed with schizophrenia, which rendered him "a danger to himself and others." [Id.] Seth received medication to manage his condition, and he applied for Medicaid to help pay for this medication. [Id. ¶¶ 5, 7.] His application was approved and his Medicaid became effective on November 1, 2007. [Id. ¶ 7.]

In 2009, however, Seth's Medicaid coverage was terminated. [Id. ¶ 8.] Acting as Seth's legal guardian, Plaintiff attempted to reinstate Seth's Medicaid coverage, but she was unsuccessful. [Id. ¶ 9.] Without Medicaid coverage, Seth allegedly had "no means to obtain the medications necessary to treat his mental illness." [Id. ¶ 11.] Plaintiff claims that as a result of this lack of treatment, Seth "attacked and seriously injured" Plaintiff on May 15, 2009. [Id. ¶ 12.]

At the time of the preceding events, the Indiana Medicaid program was administered by the Indiana Family and Social Services Administration ("FSSA"). [Id. ¶ 3.] Plaintiff alleges that in 2006, the FSSA entered into an agreement with International Business Machines Corporation ("IBM"), under which IBM "agreed to carry out many of the responsibilities associated with administration of the Medicaid program." [Id. ¶ 4.] After signing this agreement, IBM and the FSSA thus shared responsibility for administering Indiana's Medicaid program. [See id.]

Plaintiff claims that the FSSA and IBM were negligent in administering the program and that their negligence caused the termination of Seth's Medicaid benefits in 2009. [Id. ¶ 8.] She asserts that at all relevant times, Seth was actually eligible for Medicaid, such that IBM and the FSSA erred when they terminated his benefits. [Id. ¶ 10.] Plaintiff thus concludes that the negligence of IBM and the FSSA caused the loss of Seth's medication, which, in turn caused the attack that injured her. [See id. ¶¶ 11–13.]

Based on this theory of liability, Plaintiff filed suit in this Court on May 13, 2011. [Id. ¶ 14.] She named as defendants 1) IBM; 2) Anne Murphy, individually and in her capacity as Secretary of the FSSA; and 3) John and Jane Doe, who were allegedly employees of IBM or the local

---

1. Federal courts are divided on whether a motion to remand is a case-dispositive issue for which a magistrate judge may issue only a report and recommendation. *See Johnson v. Globus Med., Inc.*, No. 1:14–CV–00730–SEB–MJD, 2015 WL 71035, at *2 (S.D.Ind. Jan. 5, 2015). Judge Barker, however, has recently held that motions to remand are in fact case dispositive, *see id.*, and for the reasons explained in that decision, the Magistrate Judge in this case will accordingly issue a report and recommendation on Plaintiff's Motion for Remand.

FSSA office that handled Seth's Medicaid applications. [*Id.*]

Plaintiff's 2011 complaint included claims brought under Indiana law and 42 U.S.C. § 1983. [*Id.; see also* Dkt. 21-1 (Pl.'s 2011 Compl.).] This Court dismissed the Section 1983 claim under Fed.R.Civ.P. 12(b)(6). [Dkt. 1-1 ¶ 15; *see also* Dkt. 21-3 (Entry on Mot. To Dismiss).] The Court then addressed Plaintiff's state law claims and noted that "jurisdiction on all of Plaintiff's remaining claims is based upon 28 U.S.C. § 1367, which provides for the exercise of supplemental jurisdiction over claims based upon state law that are closely related to the federal claims in a case." [Dkt. 21-3 at 7.] The Court further observed that when the "federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts." [*Id.* (quoting *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir.2008)).] The Court thus "decline[d] to exercise supplemental jurisdiction over the state law claims asserted in Land's complaint" and dismissed those claims without prejudice. [Dkt. 21-3 at 7-8.] Plaintiff appealed the Court's decision, but the Seventh Circuit affirmed. *Land v. Int'l Bus. Machines, Inc.*, 485 Fed.Appx. 830, 831 (7th Cir.2012).

On September 19, 2014, Plaintiff filed a new complaint in Indiana's Marion County Superior Court. [Dkt. 1-1.] This complaint named as defendants 1) IBM; 2) the FSSA; and 3) the State of Indiana ("the State"). [*Id.*] Plaintiff explained that in re-filing her claims, she "named the state entities responsible for the conduct alleged rather than the individuals who were named in the original federal court complaint, as required by Ind.Code § 34–13–3–5." [*Id.* ¶ 17.] The substance of Plaintiff's allegations, however, remained the same, in that Plaintiff asserted that defendants' negligence in administering Indiana's Medicaid program resulted in the attack that caused her injuries. [*See* Dkt. 1-1; Dkt. 21-1.]

On October 22, 2014, IBM removed the case to this Court. [*See* Dkt. 1.] In its notice of removal, IBM asserted that the case was properly removable 1) because Plaintiff's claims raise a substantial federal question, [*id.* ¶ 6], and 2) because complete diversity exists among all parties who were properly joined. [*Id.* ¶ 19.] Neither the State nor the FSSA joined the notice of removal, but IBM asserted that their joinder in the action was fraudulent, such that their joinder in the notice of removal was not required. [*Id.* ¶ 40.] On November 21, 2014, Plaintiff moved to remand this case to state court, [Dkt. 20], and the Court now addresses Plaintiff's motion.

## II. Discussion

██ The defendant in a civil action brought in state court may remove the case to the U.S. district court for the district embracing the place where the action is pending, provided the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 758 (7th Cir.2009).

IBM asserts that original jurisdiction in this case rests both on the presence of a federal question, *see* 28 U.S.C. § 1331, and on the parties' complete diversity of citizenship. *See* 28 U.S.C. § 1332. The Court will first address federal question jurisdiction and then turn to diversity jurisdiction.

### A. Federal Question Jurisdiction

██ District courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Plaintiff in this case has filed what she describes as "state law negligence claims," [Dkt. 1–1 ¶ 14], but as IBM notes in its notice of removal, federal question jurisdiction exists "over state-law claims that implicate significant federal issues." [Dkt. 1 ¶ 7 (quoting *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005)).] This doctrine "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law[.]" *Grable*, 545 U.S. at 312, 125 S.Ct. 2363. The relevant question is thus whether the state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314, 125 S.Ct. 2363. If so, then a court has federal question jurisdiction over the state-law claim. *See id.* at 314–15, 125 S.Ct. 2363.

IBM argues that Plaintiff's claims "fit comfortably within *Grable's* standard," such that the Court may exercise jurisdiction over them. [Dkt. 1 ¶ 11.] IBM notes that Plaintiff claims that her son's Medicaid coverage was negligently terminated, and that Medicaid is "borne of federal statutory law, governed by extensive federal regulation, largely funded by the government, and overseen by a federal agency." [*Id.* ¶¶ 12, 14 (citations omitted).] IBM adds that these "federal issues are disputed," as IBM "denies that plaintiff's son was entitled to Medicaid benefits" and asserts that it "complied with all applicable federal laws." [*Id.* ¶ 13.] Finally, IBM notes that federal courts have previously considered and ruled on "wrongful failure to provide Medicaid benefits," such that exercising jurisdiction in this case would not upset the "congressionally approved balance of federal and state judicial responsibilities." [*Id.* ¶ 17.]

Plaintiff opposes IBM's arguments on three grounds. [*See* Dkt. 21.] She contends 1) that the law of the case doctrine precludes IBM from asserting that this Court has jurisdiction [*id.* at 5]; 2) that IBM waived any opportunity it had to assert that this Court has federal question jurisdiction [*id.* at 7–8]; and 3) that her claims do not raise a federal question. [*Id.* at 8.]

### 1. Law of the Case

■ Plaintiff argues that the law of the case doctrine prohibits IBM from asserting that a federal question exists in this case. [*Id.* at 5.] Plaintiff bases this argument on this Court's prior dismissal of her section 1983 claim and its accompanying decision to relinquish jurisdiction over her state-law negligence claims. [*Id.* at 5–6; *see also* Dkt. 21–3 at 7 ("[T]he Court declines to exercise supplemental jurisdiction over the state law claims asserted in Land's complaint.").] Plaintiff contends this decision amounted to a determination "that there is no basis for [this Court] to exercise jurisdiction over Land's state law negligence claims," and that this determination now prohibits a different decision on whether the Court has jurisdiction over the claims. [*Id.* at 7.]

■ "The doctrine of law of the case is a rule of practice under which '... a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation.'" *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1031 (7th Cir.1997) (citation omitted). Thus, if a district court enters a final judgment, but that judgment is reversed and remanded on appeal, "the trial judge would be required to adhere on remand to the rulings that he had made before the case was first appealed, provided of course that they had not been set aside by the appellate court."

*Id.* Here, Plaintiff contends that the district court's prior dismissal of the Section 1983 claim and decision not to exercise jurisdiction over the remaining claims carried an "[i]mplicit" finding that "Land's state law negligence claims did not raise a federal question under 28 U.S.C. § 1331." [Dkt. 21 at 6.] Because the Seventh Circuit did not set aside that aspect of the Court's decision, *see Land,* 485 Fed.Appx. 830, Plaintiff contends that this implicit finding is now the law of the case.

■■■ Law of the case, however, is "not an immutable concept." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 231 (7th Cir.1988) (quotation omitted). "As a general rule, the doctrine does not extend to issues not presented or decided on the prior appeal and does not include questions present in a case and which might have been decided but were not." *Id.* In this case, the presence of a federal issue in Land's negligence claims was not "presented" during the first stage of this litigation. IBM's motion to dismiss Land's claims in her first case did not address this issue, [*see* Dkt. 21–2], and the Court's entry dismissing Land's claims likewise did not analyze whether the state-law claims raised a federal issue. [*See* Dkt. 21–3.] Without such a presentation of and decision on the issue, the law of the case doctrine does not apply. *See Sterling Elec., Inc.,* 866 F.2d at 231.

■■■ Moreover, even if the Court's prior decision to dismiss the state law claims did carry an implicit finding that they did not raise a federal question, this finding would be entitled to little weight. "[T]he law of the case doctrine is discretionary and does not preclude a district court from reopening a decided issue." *Galvan v. Norberg,* 678 F.3d 581, 587 (7th Cir.2012). In particular, the doctrine is "less controlling when the disputed issue is not presented in 'precisely the same way' to the later judge." *Id.* (quoting *Brengettcy v. Horton,* 423 F.3d 674, 680 (7th Cir. 2005)). As noted above, the federal question issue was not presented at all in Land's first case—let alone presented in "precisely the same way"—such that this Court now owes little deference to the prior decision not to exercise supplemental jurisdiction.

■■■ The nature of the question at issue also reinforces this conclusion. "[C]ourts are significantly less constrained by the law of the case doctrine with respect to jurisdictional questions." *Shakman v. Dunne,* 829 F.2d 1387, 1393 (7th Cir.1987); *see also In re Enna Associated Investors,* 61 B.R. 687, 689 (N.D.Ill.1986) ("[C]ertain considerations may occasionally make a departure from the law of the case doctrine appropriate.... Questions of subject matter jurisdiction are considered to be more suitable for reconsideration than most other determinations."). In this case, the disputed issue is whether the Court has subject-matter jurisdiction, and the law of the case doctrine thus applies with less force than it typically would. The Court is therefore less inclined to rest on the "discretionary" doctrine, *Galvan,* 678 F.3d at 587, and is willing to examine the presence of a federal question.[2]

---

**2.** The Seventh Circuit has noted that, despite its statement in *Shakman,* 829 F.2d at 1393, the law of the case doctrine may apply to questions of subject matter jurisdiction. *See Sierra Club v. Khanjee Holding (US) Inc.,* 655 F.3d 699, 704 (7th Cir.2011). In *Khanjee,* however, the parties had "vigorously litigated the question of jurisdiction" in an earlier stage of the case, and the Seventh Circuit was not "confronted with a significantly different legal landscape" than at the earlier stage. *Id.* Here, in contrast, the parties did not analyze at all—let alone vigorously litigate—the federal question issue in the first stage of this litigation, and the parties' newly raised arguments in this stage place the court in a "significantly different legal landscape" than during Land's first case. It is thus appropriate to

Finally, Plaintiff's argument regarding the effect a decision to decline supplemental jurisdiction has been previously rejected. In *National Business Development Services., Inc. v. American Credit Education & Consulting, Inc.,* the plaintiff originally filed suit in federal court and asserted 1) a federal claim under the Copyright Act and 2) various state-law claims. No. CIV. 07–14841, 2008 WL 186367, at *1 (E.D.Mich. Jan. 18, 2008). The court dismissed the federal copyright claim and "declined to exercise supplemental jurisdiction over" the plaintiff's state-law claims. *Id.* The plaintiff then filed a new suit in state court, alleging only state-law claims. *Id.* The defendants removed the case on the grounds that the state-law claims were preempted by the Copyright Act, and the plaintiff moved to remand. *Id.* at *1–2. The plaintiff argued that its claims were "clearly grounded in state law" and "that, because [the court] previously refused to exercise supplemental jurisdiction over these claims, they are established as state-law claims under the doctrines of judicial estoppel and the law of the case." *Id.* at *2.

This is exactly the argument that Land makes in this case, [*see* Dkt. 21 at 6], but the court in *National Business Development* rejected it. That court noted that it had "previously dismissed Plaintiff's alleged state-law claims without argument," and that the relevant legal issues had changed in light of the plaintiff's new complaint and "the current status of the case." *Nat'l Bus. Dev.,* 2008 WL 186367, at *3. It thus determined that it was "appropriate to consider whether the Copyright Act preempts [plaintiff's state-law] claims and renders federal jurisdiction appropriate." *Id.*

The situation in this case is analogous. The Court previously dismissed Land's state-law claims "without argument," [3] and the relevant legal issues have now changed in light of IBM's new argument that the state-law claims actually raise a substantial and disputed federal issue. Thus, just as the court did in *National Business Development,* this Court finds that it is appropriate to consider whether federal question jurisdiction exists over Plaintiff's current claims. Law of the case, in short, does not foreclose this Court's evaluation of whether the claims raise a substantial and disputed federal issue.

## 2. Waiver

Plaintiff next argues that, even if the law of the case doctrine does not apply, IBM has "waived any claim that federal question jurisdiction exists here by failing to cross appeal this Court's September 29, 2011, Judgment." [Dkt. 21 at 7.] She reiterates her contention that the Court's earlier relinquishment of the state-law negligence claims included a finding that there was no federal jurisdiction over those claims, and argues that if IBM wanted to alter that finding, it had to cross-appeal the judgment. [*Id.* at 8.] Because IBM did not do so, *see Land,* 485 Fed.Appx. 830, Plaintiff claims IBM has "no right to challenge the judgment." [Dkt. 21 at 8.]

At the outset, this argument rests on the premise that the Court already made a "determination that it lacked jurisdiction over [Land's] state law claims." [Dkt. 34 at 4 (Pl.'s Reply Br.).] As described above, however, the parties never presented and the Court never analyzed jurisdiction over these claims, such that the Court

evaluate the issue of subject matter jurisdiction at this time.

3. Plaintiff's appeal focused on the Court's dismissal of Plaintiff's federal claim, not on the Court's refusal to exercise supplemental jurisdiction. *See Land,* 485 Fed.Appx. 830.

hardly "determined" the issue in the way Land asserts.

■ Furthermore, Plaintiff herself notes that " 'a federal court always has jurisdiction to determine its own jurisdiction.' " *Knudsen v. Liberty Mut. Ins. Co.,* 411 F.3d 805, 808 (7th Cir.2005) (quoting *United States v. Ruiz,* 536 U.S. 622, 628, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002)). Thus, even if IBM waived its right to assert federal question jurisdiction, the Court may still—on its own—consider the issue. Indeed, "upon a challenge to the court's jurisdiction by a party, the court should conduct a careful inquiry and make a conclusive determination whether it has subject matter jurisdiction or not." *Hay v. Indiana State Bd. of Tax Comm'rs,* 312 F.3d 876, 879 (7th Cir.2002) (quotation omitted).[4] The current jurisdictional dispute thus requires that the Court assess its jurisdiction, and so the Court now turns to the substance of the federal question inquiry.

### 3. Substantial and Disputed Question

■ Plaintiff argues that this Court lacks federal question jurisdiction because her claims are governed by state law and do not raise a federal question. [*Id.* at 8.] Both parties cite *Grable,* 545 U.S. 308, 125 S.Ct. 2363, and thus seem to agree that federal question jurisdiction over Plaintiff's claims exists if they "necessarily raise · a stated federal issue, actually disputed and substantial, which a federal forum may entertain without · disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314, 125 S.Ct. 2363.

In *Grable,* the IRS seized property from the plaintiff and sold it to the defendant. *Id.* at 310, 125 S.Ct. 2363. Under 26 U.S.C. § 6335, the IRS was required to give notice of the seizure, which it did by certified mail. *Id.* Five years later, the plaintiff brought a quiet title action in state court, claiming that the defendant's title was invalid "because the IRS had failed to notify Grable of its seizure of the property in the exact manner required by § 6335(a) [.]" *Id.* The defendant removed the case, and on appeal, the Supreme Court determined that federal question jurisdiction existed. *Id.* at 314, 125 S.Ct. 2363.

The Court first noted that "the meaning of the federal statute [26 U.S.C. § 6335] [was] actually in dispute," and in fact, the meaning of the federal statute was "the only legal or factual issue contested in the case." *Id.* at 315, 125 S.Ct. 2363. Second, the Court noted that the "meaning of the federal tax provision is an important issue of federal law" because the · Government "has a strong interest in the prompt and

---

**4.** Plaintiff argues that the Court's duty to assess its jurisdiction means the Court necessarily assessed whether it had jurisdiction over the state law claims when it declined to exercise supplemental jurisdiction over them. [Dkt. 34 at 2.] As *Hay* indicates, however, the Court's duty arises "upon a challenge" to the Court's jurisdiction. 312 F.3d at 876. Land's first case involved no such challenge to the Court's jurisdiction, such that the Court was not obligated to examine its jurisdiction. Indeed, a complaint's jurisdictional allegations are accorded a "presumption of correctness," which falls away once a party "proffers evidence that calls the court's jurisdiction into

question." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n,* 149 F.3d 679, 685 (7th Cir.1998). In this case, Land's original complaint stated that the "Court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. § 1367." No party questioned this assertion or proffered evidence to the contrary, and so the Court was entitled to presume that § 1367—rather than § 1331—was in fact the basis for jurisdiction. Now, however, the parties *do* dispute the basis for jurisdiction over these claims, and the Court is obligated to assess the issue.

certain collection of delinquent taxes," and because "the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like [the defendant] to satisfy themselves that the Service has touched the bases necessary for good title." *Id.* (quotation omitted). Finally, the Court observed that "it will be the rare state title case that raises a contested matter of federal law," such that allowing for federal jurisdiction would have only "a microscopic effect on the federal-state division of labor." *Id.* at 315, 125 S.Ct. 2363.

Plaintiff's claims in this case do not fit within this framework. First, IBM notes that Medicaid is a "creature of federal law," [Dkt. 30 at 8], but IBM does not identify a single federal statute that this Court must interpret or apply in deciding Plaintiff's claims. [*See id.* at 7–9.] Plaintiff contends that, at all relevant times, Seth was entitled to Medicaid benefits, [Dkt. 1–1 ¶ 10], but it is the state government—not the federal government—that determines eligibility guidelines for each state's Medicaid program. *See* 42 U.S.C. § 1396a. Likewise, Plaintiff contends that Seth's Medicaid benefits were improperly terminated, [Dkt. 1–1 ¶ 8], but it is the state government—not the federal government—that administers each state's Medicaid program. *See* 42 U.S.C. § 1396a; *see also Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 911 (7th Cir.2009) ("Medicaid programs are administered at the state level according to rules each state promulgates."). As a result, Plaintiff's claims will require an evaluation of state law and state regulations. *See, e.g.,* Ind.Code § 12–15–2–0.5 et seq. (defining Medicaid eligibility); 405 Ind. Admin. Code 2–1–1 et seq. (same).

This case is thus far removed from Grable: there, the interpretation of a federal law was the only disputed issue. *Grable,* 545 U.S. at 315, 125 S.Ct. 2363. Here, in contrast, the Court need not interpret any federal law, as the disputed issues will involve only state actors' compliance with state laws and regulations. This, in turn, hardly suggests the presence of "a stated federal issue, actually disputed and substantial," *id.* at 314, 125 S.Ct. 2363, rendering it inappropriate to find that federal question jurisdiction exists.

Plaintiff also acknowledges that state Medicaid guidelines must meet certain federal minimum requirements. [Dkt. 21 at 10.] These requirements, however, are irrelevant to this case, as Plaintiff "is not contending that Indiana's statutory eligibility requirements for Medicaid run afoul of federal requirements[.]" [*Id.*] The Court will thus have no cause to interpret or apply the federal laws establishing Medicaid's minimum guidelines, making it unlikely that a substantial federal question will arise.

Next, the cases IBM cites to support its position are inapposite. In its notice of removal, IBM cites *Banks v. Secretary of Indiana Family & Social Services Administration* for the proposition that assertions of "wrongful failure to provide Medicaid benefits are routinely litigated in federal court regardless of diversity." [Dkt. 1 ¶ 17 (citing 997 F.2d 231 (7th Cir. 1993)).] In that case, however, the plaintiff 1) sued both state officials and the Secretary of the U.S. Department of Health and Human Services; and 2) asserted a violation of the Due Process Clause of the Fifth Amendment on the grounds that Indiana failed to satisfy federal regulations requiring certain procedural protections. *See Banks,* 997 F.2d at 236–40. Here, in contrast, Land has sued only state entities and IBM, and, as noted above, Land has no quarrel regarding Indiana's compliance with the federal regulations setting the minimum requirements for state Medicaid programs. [Dkt.

21 at 10.] Thus, while the Seventh Circuit in *Banks* extensively analyzed federal law, *see* 997 F.2d at 243–44, the Court in this case will have no cause to do so. This case therefore will not require interpreting federal law in a way that could raise a substantial federal question.

IBM also cites *Chickadaunce v. Minott,* No. 1:13–CV–01223–WTL, 2014 WL 4980547 (S.D.Ind. Oct. 6, 2014), and *New York City Health & Hospitals Corp. v. WellCare of New York, Inc.,* 769 F.Supp.2d 250 (S.D.N.Y.2011). [Dkt. 30 at 8.] Both cases are distinguishable from Land's claims. In the former, plaintiffs claimed 1) that state officials administered Indiana's Medicaid program in a way that "did not ensure Plaintiffs received benefits to which they were entitled under federal Medicaid Law;" and 2) that state officials violated the (federal) Americans with Disabilities Act of 1990 and the (federal) Rehabilitation Act of 1973. 2014 WL 4980547, at *1. In the latter, plaintiffs asserted that defendants breached a contract requiring defendants "to pay health care providers according to the terms and conditions required by Medicare law and regulations." 769 F.Supp.2d at 256. Both cases thus involved interpretation of federal statutes. *See, e.g.,* 2014 WL 4980547, at *6, 769 F.Supp.2d at 257.

Land's claims, in contrast, will not. Unlike the plaintiffs in *Chickadaunce,* Land has alleged no failure to administer Indiana's Medicaid program in a way that complies with federal law. [*See* Dkt. 1–1 (Compl.).] And unlike the plaintiffs in *WellCare,* Land has alleged no failure to abide by the terms of an agreement incorporating federal Medicaid law by reference. [*See id.*] Again, then, Land's complaint will not require interpretation of federal law and therefore does not raise a federal issue.

IBM finally argues that the (purported) federal issue in this case is "substantial" because Medicaid is "funded by the federal treasury." [Dkt. 30 at 8; *see also* Dkt. 1–1 ¶ 8 ("The federal government funds 50%–83% of each state's Medicaid costs for patient care.").] This may be true, but it is irrelevant. In *Grable,* the Supreme Court acknowledged that lawsuits impacting the federal treasury could raise substantial issues, *see* 545 U.S. at 315, 125 S.Ct. 2363, but Land's suit will not have such an impact: Her complaint is directed only at state entities, and it requests a "judgment which will sufficiently compensate her for her injuries and damages, for the costs of this action, for trial by jury, and all other just and proper relief." [Dkt. 1–1 at 3.] Thus, Land does not request payment of Medicaid benefits that were wrongfully withheld in the past, nor does she request any injunctive relief entitling her son to future Medicaid benefits—in fact, Seth is a not a party to this action. Any judgment that Land receives thus would have little effect on the federal treasury, regardless of federal funding for Indiana's Medicaid program. As such, any federal question that Land's suit may implicate—if indeed it implicates any such question at all—is not a "substantial" federal question. The Court accordingly concludes that Land's state law claims do not raise a substantial and disputed federal question, such that the Court does not have federal question jurisdiction over these claims.

## B. Diversity Jurisdiction

IBM argues that even if the Court does not have federal question jurisdiction over Land's claims, the Court may exercise diversity jurisdiction over this case. [Dkt. 1–1 ¶ 19; Dkt. 30 at 4.] A district court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000"[5] and is be-

---

5. The parties do not dispute that the amount in controversy exceeds $75,000.

tween "citizens of different states." 28 U.S.C. § 1332(a)(1). Complete diversity is required, in that § 1332 applies "only to cases in which no party share[s] common citizenship with any party on the other side of the dispute." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir.1992).

▮ Plaintiff in this case is a citizen of Indiana, [*see* Dkt. 1–1 ¶ 1],[6] and IBM is a citizen of New York. [Dkt. 1 ¶ 21.] The remaining parties are the State of Indiana and the Indiana Family and Social Services Administration. [*See* Dkt. 1] A state is not a citizen of any state, such that the presence of the State of Indiana would ordinarily destroy complete diversity. *See, e.g., Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109 (7th Cir.1983). The FSSA, meanwhile, may be treated either as the State itself—which would again destroy complete diversity—or, if "separate and distinct from the state of Indiana," may be treated as a citizen of Indiana. *See id.* Even in the latter case, however, complete diversity would not exist, as Plaintiff is also a citizen of Indiana. The presence of either the State of Indiana or the FSSA would thus typically preclude diversity jurisdiction.

IBM, however, argues that, "under the doctrine of fraudulent or improper joinder," both the State and the FSSA were improperly joined, such that these defendants are "disregarded when determining whether diversity exists." [Dkt. 1 ¶ 23.] If IBM is correct, then the only properly joined parties are Plaintiff and IBM, such that complete diversity of citizenship exists. The Court must thus determine whether the FSSA and the State were fraudulently joined. In doing so, the Court will first consider the FSSA's join-

der and then, if necessary, consider the State's joinder.

### 1. Fraudulent Joinder

▮ Under the doctrine of fraudulent joinder, "an out-of-state defendant's right of removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim has 'no chance of success.'" *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir.2013) (quoting *Poulos*, 959 F.2d at 73). The doctrine is designed to "protect the defendants' statutory right to remove," and thus does not allow a plaintiff to "join a nondiverse defendant simply to destroy diversity jurisdiction." *Id.* (quotations omitted). The plaintiff's intent, however, is irrelevant: the doctrine applies whenever the claim against the "in-state defendant ... simply has no chance of success, whatever the plaintiff's motives." *Poulos*, 959 F.2d at 73.

The defendant asserting fraudulent joinder bears "a heavy burden." *Id.* "The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Id.* (emphasis original). The court must thus assess the defendant's argument and "engage in an act of prediction: is there any reasonable possibility that a state court would rule against the nondiverse defendant?" *Id.* If so, then the joinder was *not* fraudulent, and the citizenship of the non-diverse defendant cannot be disregarded. *See id.*

IBM in this case contends "there is no reasonable possibility that this case will go forward" against the FSSA because

---

**6.** Technically, Plaintiff alleges only that she is a "resident" of Indiana, which does not establish her citizenship for purposes of diversity jurisdiction. *See Poulos v. Naas Foods, Inc.*, 959 F.2d at 70 n. 1. The parties, however, treat Plaintiff as an Indiana citizen, [*see, e.g.*, Dkt. 1–1 ¶ 21 (asserting "plaintiff is a citizen of Indiana")], and they do not dispute her citizenship. The Court thus also treats Plaintiff as an Indiana citizen.

"Plaintiff's claims against Indiana and the FSSA are barred by the statute of limitations." [Dkt. ¶ 25.] In Indiana, the "limitations period for a negligence action is two years after the cause of action accrues." [*Id.* ¶ 26 (citing Ind.Code § 34–11–2–4).] The cause of action in this case accrued on May 15, 2009—the date of Plaintiff's injury—such that Plaintiff had until May 15, 2011 to file her complaint.[7] [*Id.* ¶ 27.] Plaintiff, however, did not file her current complaint until September 19, 2014, [*see* Dkt. 1–1], and IBM thus concludes that her claims were untimely. [Dkt 1 ¶ 28.]

Plaintiff responds that Indiana's Journey's Account Statute ("JAS") operates to save her claims. [Dkt. 21 at 13.] That statute provides:

Sec. 1. (a) This section applies if a plaintiff commences an action and:

(1) the plaintiff fails in the action from any cause except negligence in the prosecution of the action;

(2) the action abates or is defeated by the death of a party; or

(3) a judgment is arrested or reversed on appeal.

(b) If subsection (a) applies, a new action may be brought not later than the later of:

(1) three (3) years after the date of the determination under subsection (a); or

(2) the last date an action could have been commenced under the statute of limitations governing the original action;

and be considered a continuation of the original action commenced by the plaintiff.

Ind.Code § 34–11–8–1. Plaintiff argues that she timely filed her original action within the two-year statute of limitations, and that this Court's dismissal of her state-law claims without prejudice constituted a "fail[ure] in the action" under subsection (a); Plaintiff thus contends that, under subsection (b), she had an additional three years to file a new action. [*See* Dkt. 21 at 14.] Because the dismissal of her state law claims occurred on September 29, 2011, [Dkt. 21–3 at 8], and because her new complaint was filed September on 19, 2014, [Dkt. 1–1 at 1], Plaintiff concludes her claims are timely.

Based on these arguments, the viability of any claim against the FSSA depends on the applicability of the JAS, and the Court must thus "engage in an act of prediction" and ask whether there is "any reasonable possibility that a state court would rule" that the JAS applies. *See Poulos,* 959 F.2d at 73.

**2. Applying the Journey's Account Statute**

IBM argues that the JAS applies only to new causes of action that assert the same claims against the same defendants. [Dkt. 30 at 4.] Here, Plaintiff's original complaint named the defendants as 1) IBM; 2) Anne Murphy, individually and in her capacity as Secretary of the FSSA; and 3) John and Jane Doe, who were allegedly employees of either IBM or the local FSSA office that handled Seth's Medicaid applications. [*See* Dkt. 21–1.] Her current complaint, however, names the defendants as 1) IBM; 2) the State of Indiana; and 3) the FSSA itself. [*See* Dkt. 1–1.] IBM thus concludes that the JAS does not apply to save the claims against the new defendants. [Dkt. 30 at 4.] For the reasons explained below, the Court will first focus its analysis upon whether the FSSA has been fraudulently joined.

Plaintiff responds that she altered the names of the defendants only to comply with Indiana's procedures governing

7. Plaintiff does not contest that these were the applicable dates for her claims. [*See* Dkt. 21.]

claims against state entities. [Dkt. 21 at 14.] In particular, the Indiana Code provides:

> Civil actions relating to acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may be brought only against the board, the committee, the commission, the authority, or the other instrumentality of a governmental entity. A member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may not be named as a party in a civil suit that concerns the acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity where the member was acting within the scope of the member's employment. For the purposes of this subsection, a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity is acting within the scope of the member's employment when the member acts as a member of the board, committee, commission, authority, or other instrumentality.

Ind.Code § 34–13–3–5(a). Plaintiff therefore could not individually name Anne Murphy or the unknown employees of the FSSA as defendants. Instead, to comply with Indiana law, she had to name only the FSSA itself.

In evaluating these arguments, the Court first notes that the case law on which IBM relies does not persuasively establish that the JAS is inapplicable in all cases in which the parties to an action change. IBM first cites *Kindred Nursing Centers v. Estate of McGoffney*, 15 N.E.3d 641, 646 n. 1 (Ind.Ct.App.2014); *Eves v. Ford Motor Co.*, 152 Ind.App. 34, 281 N.E.2d 826, 831 (1972); and *Ware v. Waterman*, 146 Ind.App. 237, 253 N.E.2d 708, 715 (1969). [*See* Dkt. 30 at 4.] In those cases, the Indiana courts applied the JAS when the new complaint did not add any new parties. *See, e.g., Ware*, 253 N.E.2d at 715 (applying JAS where "plaintiff commenced a new action against the same party defendant for the same claim"). These cases thus establish that the JAS *does* apply when the new complaint adds no new defendants. The cases, however, do not necessarily imply that the JAS does *not* apply when the new complaint *does* add or change the defendants.

Next, IBM cites *Vesolowski v. Repay*, 520 N.E.2d 433 (Ind.1988). [Dkt. 30 at 4.] That case, however, refused to apply the JAS to save claims asserted by *plaintiffs* who were new parties to the action. *Id.* at 435–36. The court determined that the new plaintiffs' claims were not a continuation of the original action within the meaning of the JAS, but that ruling is hardly applicable to a case such as this one, in which the *same* plaintiff alleges in both her federal and state complaints that the same conduct caused her the same injury.

IBM also cites *Eads v. Community Hospital*, 932 N.E.2d 1239 (Ind.2010). There, the Indiana Supreme Court noted that Indiana courts had previously declined to apply the JAS in a case where the new complaint changed both the parties and the elements of the claim asserted. *Id.* at 1246. The Indiana Supreme Court then applied the JAS to a new complaint that "changed no parties, facts or elements." *Id.* IBM thus concludes that the JAS does not apply when a complaint changes the parties involved. [*See* Dkt. 30 at 5.]

This conclusion suffers from two flaws: First, as noted above, the fact that the JAS *does* apply when there is *no* change in parties does not necessarily mean that the JAS does *not* apply when the parties do change. Second, the Indiana Supreme Court in *Eads* applied the JAS even though the complaint in that case *was* "altered" to comply with "the procedural requirements to assert the claim" at issue. *Eads*, 932 N.E.2d at 1246. As explained

above, Plaintiff in this case also "altered" her original complaint to comply with "the procedural requirements" to assert her claim: Indiana Code section 34–13–3–5(a) required Plaintiff to name only state entities as defendants, and so Plaintiff altered her complaint to do exactly that. The change in the complaint was thus analogous to the change in *Eads,* such that if the JAS applied in *Eads,* then it would likely apply in this case as well.

IBM finally cites *McGill v. Ling,* 801 N.E.2d 678 (Ind.Ct.App.2004). There, the court declined to apply the JAS to save claims against a party because the party "was not, in fact, named as a defendant until [the plaintiff] filed" her new complaint. *Id.* n. 2. IBM thus concludes, again, that the JAS does not apply when the defendant in the action changes.

In *Eads,* however, the Indiana Supreme Court specifically cited *McGill* and still determined that the JAS applied to a complaint that had been altered to comply with procedural requirements. *See Eads,* 932 N.E.2d at 1246. *McGill* thus does not defeat the conclusion that Land was free to alter her complaint to repair procedural defects.

Next, even if the Court accepts IBM's argument, the JAS may still apply to Land's claims. Land's original suit included allegations against Anne Murphy both "individually **and in her capacity as Secretary of the Indiana Family & Social Services Administration.**" [Dkt. 21–1 at 1.] Land thus sued Murphy in both "her individual and official capacities." · [*Id.* ¶ 5.]

▮ An "official-capacity" suit, however, "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Crawford v. City of Muncie,* 655 N.E.2d 614, 618 (Ind.Ct.App.1995) (citing *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Thus, " '[a]s long as

the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.' " *Id.* (quoting *Graham,* 473 U.S. at 166, 105 S.Ct. 3099). In this case, then, as long as the FSSA received notice of and an opportunity to respond to Land's complaint against Murphy, the FSSA was a party to Land's original complaint.

Here, the FSSA plainly did. In *Porter County Sheriff Department v. Guzorek,* the Indiana Supreme Court assessed when notice may be attributed to a government entity based on a lawsuit against an individual. 857 N.E.2d 363, 366 (Ind.2006). That suit involved Indiana Trial Rule 15(C), which provides that an amended complaint that changes a party relates back to an earlier complaint if, *inter alia,* the new party "has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits." Ind. R. Trial P. 15(C).

In *Guzorek,* the plaintiffs originally sued only an individual police officer, but then amended their complaint to add the police department itself. 857 N.E.2d at 366. · The Indiana Supreme Court determined that the police department had notice of the original claim because both parties were represented by the same counsel and because the department had a statutory obligation to provide counsel for the individual police officer. *Id.* at 369 (citing Ind.Code § 34–13–3–5(e) ("[A] governmental entity shall provide counsel for and pay all costs and fees incurred by or on behalf of an employee in defense of a claim or suit for a loss occurring because of acts or omissions within the scope of the employee's employment[.]")).

The same considerations apply in this case. Both the individual defendant—Murphy—and her agency—the FSSA—are or were represented by the Indiana Attorney General's office, [*see, e.g.,* Dkt. 1–

1 at 12; Dkt. 21–2 at 19], and, in accordance with Indiana Code section 34–13–3–5(e), the FSSA had an obligation to provide counsel for Murphy. Thus, just as in *Guzorek*, the government entity in this case had notice of the suit against it.

The FSSA also had a chance to respond to Land's claims: as the Court noted in its previous Entry on Motions to Dismiss, the Secretary of the FSSA in the original federal lawsuit joined IBM and the other defendants in moving to dismiss Land's claims. · [Dkt. 21–3 at 3 & n. 3.] This motion on behalf of the Secretary constitutes a response on behalf of the FSSA that satisfies the requirement that the government entity have a chance to respond to the claims against it. *See, e.g., Pubentz v. Holder*, 819 F.Supp.2d 721, 726 (N.D.Ill. 2011) (noting that FBI itself had "received the opportunity to respond through [FBI Director's] instant motion to dismiss").

The FSSA itself thus received both notice of and a chance to respond to Plaintiff's original complaint, and the suit against Murphy in her official capacity was a suit against the FSSA itself. *See Crawford*, 655 N.E.2d at 618; *accord Graham*, 473 U.S. at 165, 105 S.Ct. 3099. Thus, IBM may argue that Land "did not file suit against the FSSA ... until 2014," [Dkt. 30 at 4], but this is incorrect. By naming Anne Murphy as a defendant in her official capacity, Plaintiff *did* sue the FSSA in her original complaint. Hence, even if the JAS *does* apply only to allegations brought against the same defendant, the FSSA in this case *is* one of the same defendants Plaintiff originally sued. The JAS therefore applies to save Plaintiff's claims against the FSSA.

## 3. Effect on Fraudulent Joinder Claim

The result of this analysis is that Land's claims against the FSSA likely are not time-barred. This conclusion, however, goes further than necessary to decide the current motion: Plaintiff need not show that her claims would "likely" succeed; instead, to establish fraudulent joinder, IBM "must show that, after resolving all issues of fact *and law* in favor of the plaintiff," there is no "reasonable possibility" that a court would rule in Land's favor. *Poulos*, 959 F.2d at 73. For the reasons described above, a "reasonable possibility" exists that the claims against the FSSA will proceed, and Land therefore has not fraudulently joined the FSSA. *Poulos*, 959 F.2d at 73.

The Court also notes that it "should interpret the removal statute narrowly" and "resolv[e] any doubt in favor of the plaintiff's choice of forum in state court." *Schur*, 577 F.3d at 758. Hence, even if application of the JAS presented a closer question than the above analysis suggests, the Court would resolve that question in favor of the plaintiff and conclude, again, that Land did not fraudulently join the FSSA.

Because the FSSA was properly joined, the Court cannot disregard the citizenship the FSSA. *See Nuzzo*, 718 F.3d at 666. The presence of the FSSA thus destroys complete diversity, *see Bethlehem Steel Corp.*, 702 F.2d at 109, and the Court cannot exercise diversity jurisdiction over this case.[8]

---

**8.** Because the Court has determined that the FSSA was not fraudulently joined, and that · diversity jurisdiction therefore does not exist, it is irrelevant to the instant motion whether the State of Indiana was fraudulently joined. The presence of the FSSA alone is enough to prevent this Court from hearing this case, and the Court thus has no need to consider whether Indiana was fraudulently joined as well. On remand, the state court may decide whether the claims against the State are time-barred, but in the interest of judicial economy, this Court will not address the issue.

## C. Summary

For the reasons described in the previous sections, the Court concludes that it has neither federal question jurisdiction nor diversity jurisdiction over the present case. Because an action is properly removable only if the district court to which the action is removed has original jurisdiction, *see* 28 U.S.C. 1441(a), removal in this case was not proper, and the Magistrate Judge therefore recommends that the case be remanded to state court.

Additionally, removal under 28 U.S.C. 1441(a) requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446. The FSSA did not join IBM's removal. [*See* Dkt. 1 at 1 n. 1] IBM contends that its consent to removal is not required because the FSSA was fraudulently joined. [*Id.*] As described above, however, this argument is erroneous, and the failure of the FSSA to join the removal constitutes a defect that, again, requires remand. *See, e.g., Yount v. Shashek*, 472 F.Supp.2d 1055, 1061 (S.D.Ill. 2006).

## III. Conclusion

For the reasons set forth above, the Magistrate Judge recommends that the Court **GRANT** Plaintiff's *Motion to Remand*. [Dkt. 20.] Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Filed Feb. 10, 2015.